UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DWAIN MITCHELL,

                  Plaintiff,

    - against -

NEW YORK CITY DEPARTMENT OF
EDUCATION and DAISY FONTANEZ,
former Principal of MS 415 Wadleigh
Secondary School for Visual and Performing
Arts,

                  Defendants.

**ORDER**

20 Civ. 1555 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Pro se Plaintiff Dwain Mitchell – a former teacher at Wadleigh Secondary School for Visual and Performing Arts ("Wadleigh") – alleges that he was subjected to age, race, and gender discrimination and retaliation. (Am. Cmplt. (Dkt. No. 39)) Mitchell asserts claims against the New York City Department of Education ("DOE") and Daisy Fontanez – Wadleigh's principal – for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.; 42 U.S.C. § 1981; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq.; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.L"). (Id.) Plaintiff further alleges that the Defendants deprived him of due process by failing to provide him with a tenure hearing. (Id.)

        On March 3, 2022, this Court granted Defendants' motion to dismiss the Complaint. (See March 3, 2022 Order (Dkt. No. 36)) On April 7, 2022, Plaintiff filed an Amended Complaint, which Defendants have likewise moved to dismiss. (Am. Cmplt. (Dkt. No.

39); Mot. (Dkt. No. 40))  This Court referred Defendants' motion to Magistrate Judge Sarah

Cave for an R&R.  In a December 12, 2022 R&R, Judge Cave recommends that Defendants'

motion to dismiss be granted.  (See R&R (Dkt. No. 51))  Plaintiff objects to the R&R to the

extent that Judge Cave recommends that his discrimination and retaliation claims under Title

VII, the ADEA, Section 1981, the NYSHRL, and the NYCHRL – as well as his procedural due

process claim – be dismissed.  (Pltf. Obj. (Dkt. No. 55))

   For the reasons stated below, Plaintiff's Title VII, ADEA, Section 1981,

NYSHRL, and due process claims will be dismissed.  The Court declines to exercise

supplemental jurisdiction over Plaintiff's remaining claims under the NYCHRL, given the

different legal standards that apply to those claims.

## **BACKGROUND**

## I. **FACTS**[1]

   Mitchell is a 69-year-old African-American man who has taught for the DOE

since 1994.  Mitchell began teaching at Wadleigh in 2016.  He taught social studies,

photography, and special education during the 2016-17 and 2017-18 school years.  (Am. Cmplt.

(Dkt. No. 39) at 8 ¶¶ 1-3) [2]  Mitchell alleges that he was "the victim of age, race, and gender

discrimination by the Wadleigh administration," including Defendant Fontanez and

Superintendent Ilene Altschul.  (Id. at 8 ¶ 3)  Defendant Fontanez is "Spanish" and was

---

[1]  The parties have not objected to Judge Cave's recitation of the alleged facts.  Accordingly, this
Court adopts her factual account in full.  See Silverman v. 3D Total Solutions, Inc., 2020 WL
1285049, at *1 n.1 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the
R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background'
section and takes the facts characterized therein as true."); Hafford v. Aetna Life Ins. Co., 2017
WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate
Judge's . . . recitation of the facts of this case, and the Court adopts them in full.").
[2]  Citations to page numbers refer to the pagination generated by this District's Electronic Case
Files ("ECF") system.

Wadleigh's principal while Plaintiff worked at the school.  (Id.)  Altschul – who is not a party to this action – is alleged to be "Caucasian."  (Id.)

Mitchell alleges that he was an effective teacher, noting that "95% of [his] students passed on to the next grade, all of [his] seniors graduated, 2 of [his] students scored the highest Regents Test Scores in Social Studies at Wadleigh, 2 of [his] Special Education Students scored the highest Regents Global for Wadleigh, and 2 Art Students received full scholarships for their MOMA displayed artwork for photographic creativity."  (Id. at 9 ¶ 9)

Mitchell complains that he was not provided with a co-teacher for two of his classes during the 2017-18 school year, as required by law "if there is a certain percentage of special education students within a class."  (Id. at 8 ¶ 8)  Mitchell also complains that he had "no [a]dministrative support, no help with problem students, and there was no available Dean or Safety Officers at the school."  (Id. at 8 ¶ 8)

Despite his students' performance, Defendant Fontanez rated Mitchell "Ineffective" for the 2016-17 school year.  (Id. at 9 ¶ 10)  Mitchell appealed this rating.  (Id. at 9 ¶ 11)  The Amended Complaint does not disclose the outcome of Mitchell's appeal.  (Id.)

In "May and June of 2018[,]" Mitchell "filed at least five special complaint referrals on behalf of [his] special needs students."  (Id. at 9 ¶ 15)  Mitchell "believe[s] the school administration did not act on [those referrals]."  (Id.)

Mitchell's DOE employment was terminated after a June 25, 2018 discontinuance hearing.  (Id. at 9-10 ¶¶ 13, 17-18)  Mitchell claims that by that time he had acquired "tenure by estoppel because [he] had worked as a full-time substitute teacher in a high school under his social studies license in the 2014-15 and 2015-16 school year and had sufficient years to earn tenure."  (Id. at 10 ¶ 17)

Mitchell also claims that Wadleigh administrators, including Defendant Fontanez, retaliated against him because he (1) complained about the lack of support he and his special education students were receiving; (2) testified before the DOE Office of Special Investigations in support of another teacher; (3) was a class member in a "successful class action disparate impact racial discrimination [lawsuit against DOE]"; and (4) had created a March 2018 YouTube video entitled "Save Wadleigh," which urged that Wadleigh's administrators – including Fontanez and Altschul – be fired for mismanagement.  (Id. at 9-10 ¶¶ 13-18)

The Amended Complaint further alleges that four other "similarly situated" Wadleigh teachers "who were age 60 years or older, male, men of color, and earn[ing] salaries over $100,000 a year were removed, dismissed or eliminated from teaching at Wadleigh on or about the 2016-2017 school year."  (Id. at 8 ¶ 4)  Plaintiff alleges that two younger teachers – who were in their "late 20's/early 30's" – were "given tenure and continued to work" at Wadleigh during this time.  (Id.)

## II.   PROCEDURAL HISTORY

### A.   Administrative Proceedings and Complaint

On April 2, 2019, Mitchell filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR"), which accepted the charge on behalf of the Equal Employment Opportunity Commission ("EEOC").  (Id. at 6, 12-18)  Mitchell received a right-to-sue letter from the EEOC on January 11, 2020.  (Id. at 6, 11)

The Complaint was filed on February 20, 2020, and asserts claims against the DOE and Fontanez for (1) race and sex discrimination under Title VII; (2) race discrimination under Section 1981; (3) age discrimination under the ADEA; (4) age, race, and sex

discrimination under the NYSHRL; and (5) age, race, and sex discrimination under the NYCHRL. (Id. at 3-4)

B. **Motion to Dismiss the Complaint**

Defendants moved to dismiss the Complaint, and this Court referred the motion to Magistrate Judge Cave for an R&R.[3] (Mot. (Dkt. No. 13) at 1-2; Dkt. No. 17)

In a May 7, 2021 R&R, Judge Cave recommended that Defendants' motion to dismiss be granted in its entirety, with leave to amend as to certain claims. (R&R (Dkt. No. 30) at 2)

Judge Cave concluded that Mitchell's Title VII and ADEA discrimination claims are time-barred to the extent that they rely on alleged discriminatory acts that took place before June 6, 2018 – 300 days before Mitchell's April 2, 2019 NYSDHR complaint. (Id. at 10-11) Accordingly, the Complaint's only timely allegation of discrimination under these statutes was Mitchell's June 25, 2018 termination. (Id. at 11)

Judge Cave also recommended that Mitchell's discrimination claims under Title VII, the ADEA, Section 1981, the NYSHRL, and the NYCHRL be dismissed for failure to state claim, because the Complaint did not plead facts demonstrating a causal connection between Mitchell's age, gender, or race and the adverse employment actions he experienced. (Id. at 17)

As to Plaintiff's retaliation claims under Title VII, the ADEA, Section 1981, the NYSHRL, and the NYCHRL, Judge Cave found that "the Complaint does not allege that Mitchell engaged in any protected activity known to Defendants." (Id. at 23)

---

[3] Although Fontanez had not yet been served when the motion to dismiss was filed, this Court granted Defendants' request to deem the motion filed on behalf of Fontanez, nunc pro tunc. (Dkt. No. 27)

Judge Cave also recommended that Mitchell's <u>Monell</u> claim under Section 1981 be dismissed, because he "does not identify a municipal policy that led to any purported constitutional violation."  (<u>Id.</u> at 24-25)

As to Mitchell's NYSHRL and NYCHRL claims against the DOE, Judge Cave recommended that they be dismissed with prejudice because it is "undisputed that Mitchell did not file a notice of claim."  (<u>Id.</u> at 9)

Finally, Judge Cave recommended that Mitchell be granted leave to amend "his discrimination claims and retaliation claims under Title VII, the ADEA, Section 1981, the NYSHRL and NYCHRL, as well as his Section 1981 claim against the DOE," and that he be permitted to add a "Rehabilitation Act claim predicated on the complaints he filed on behalf of special education students within a month of his termination."  (<u>Id.</u> at 25-27)

## C.    <u>The March 3, 2022 Dismissal Order</u>

On March 3, 2022, this Court adopted Judge Cave's R&R in its entirety, and dismissed without leave to amend Mitchell's (1) NYSHRL and NYCHRL claims against DOE; (2) Title VII and ADEA claims premised on discrete acts that occurred before June 6, 2018, and (3) Title VII and ADEA claims against Defendant Fontanez.  (March 3, 2022 Order (Dkt. No. 36) at 15 ("Mitchell's failure to file a notice of claim requires dismissal of" his "NYSHRL and NYCHRL claims against the DOE[.] . . . To the extent that Plaintiff's Title VII and ADEA claims are based on discrete discriminatory actions that took place before June 6, 2018, . . . they are time-barred. . . . Mitchell's Title VII and ADEA claims against Defendant Fontanez must be dismissed, because those statutes do not impose liability on individuals."))

As to Plaintiff's remaining discrimination claims, the Court noted that the

Complaint merely describes adverse employment actions that Mitchell
experienced, without linking those adverse employment actions in any way to

Mitchell's age, race, or gender.  And while Mitchell asserts that he "was targeted and discriminated against by Principal Daisy Fontanez . . . based on being an older, African American male," and that he "believe[s] [he] ha[s] been the victim of age, race, and gender discrimination by the Wadleigh administration at DOE" (Cmplt. (Dkt. No. 2) at 8 ¶ 3), such conclusory statements – unsupported by facts giving rise to an inference of discriminatory intent – are insufficient to establish a prima facie case of discrimination.  See Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015) (in order to survive a motion to dismiss, a complaint must allege facts that "give plausible support to a minimal inference of discriminatory motivation").

(Id. at 10)

As to Plaintiff's retaliation claims, the Court agreed with Judge Cave that

the Complaint does not plausibly allege that any of these activities are "protected activities" for purposes of Mitchell's retaliation claims.  The Complaint does not suggest that Mitchell's activities were in any way "taken to protest or oppose statutorily prohibited discrimination."  Natofsky, 921 F.3d at 354 (quotation marks and citation omitted).  Rather, the allegations "show workplace difficulties entirely consistent with non-race, [non-age, and] non-gender-based . . . disputes that are plainly not actionable under statutes intended to root out discrimination on the bases of certain statutorily defined protected characteristics."  Williams v. Time Warner Inc., No. 09 Civ. 2962 (RJS), 2010 WL 846970, at *4 (S.D.N.Y. Mar. 3, 2010), aff'd, 440 F. App'x 7 (2d Cir. 2011).

(Id. at 11-12)

The Court granted Mitchell leave to amend his (1) discrimination and retaliation claims against DOE under Title VII and the ADEA, to the extent those claims are not time barred; (2) discrimination and retaliation claims against Fontanez under the NYSHRL and the NYCHRL; and (3) his Monell claim against DOE.  (Id. at 15-16)  The Court also granted Mitchell leave to add a claim under Section 504 of the Rehabilitation Act.  (Id.)

### D.   **The Amended Complaint**

The Amended Complaint was filed on April 7, 2022.  (Am. Cmplt. (Dkt. No. 39)) Like the Complaint, the Amended Complaint asserts claims against DOE and Fontanez for:  (1) race and sex discrimination under Title VII; (2) race discrimination under Section 1981; (3) age

discrimination under the ADEA; (4) age, race, and sex discrimination under the NYSHRL; and

(5) age, race, and sex discrimination under the NYCHRL.  (Id. at 3-4)

### E.   Motion to Dismiss the Amended Complaint

Defendants moved to dismiss the Amended Complaint.  This Court referred

Defendant's motion to Judge Cave.  (Mot. (Dkt. No. 40) at 1-2; Dkt. No. 44)

In a December 12, 2022 33-page R&R, Judge Cave recommends that Defendants'

motion to dismiss be granted, and that leave to amend be denied.  (R&R (Dkt. No. 51) at 32)

The Amended Complaint contains claims that this Court dismissed with prejudice

in the March 3, 2022 order.  Accordingly, Judge Cave recommends that these claims be

dismissed for the reasons explained in the March 3, 2022 order.  (Id. at 8)

Construing Mitchell's Section 1981 claim as a Section 1983 claim, Judge Cave

recommends dismissal, because the Amended Complaint "suffers from the same flaws" as the

Complaint.  (Id. at 10)  Mitchell's new allegation that Fontanez and Altschul had a "'pattern of

discriminating against [older Black] men'" is "conclusory" and "insufficient to plead a

[municipal] custom or policy," and neither Fontanez nor Altschul were final policymakers for the

DOE as required to establish a Monell claim.  (Id. at 10-11 (quoting Am. Cmplt. (Dkt. No. 39) at

8 ¶ 4))  Judge Cave also recommends dismissing any Section 1983 claim against Fontanez in her

individual capacity, because the Amended Complaint does not allege that Fontanez personally

participated in the decision to terminate Plaintiff's employment.  (Id. at 12)

Judge Cave also recommends dismissal of Mitchell's race, age, and sex

discrimination claims under Title VII, the ADEA, and the NYSHRL because – although Plaintiff

alleges that he and four other older Black male teachers were replaced by two younger teachers –

he has not alleged "any additional facts . . . from which the Court could plausibly infer that he

was 'similarly situated in all material respects' to [the] two [younger] individuals."  (Id. at 17

(quoting R&R (Dkt. No. 30) at 18 n.7))  Judge Cave likewise recommends dismissal of

Mitchell's NYCHRL discrimination claim against Fontanez because of his failure to plead facts

supporting a "causal connection between Mitchell's race, age, or gender [and the termination of

his employment]."  (Id. at 18)

   As to Plaintiff's retaliation claims under Title VII, the ADEA, the NYSHRL, and

the NYCHRL, Judge Cave recommends dismissal, because Mitchell – except as to the Gulino

class action against DOE – does not plead that he engaged in "protected activity."  (Id. at 22-23)

Judge Cave concludes that the Amended Complaint does not "plausibly allege that Fontanez –

even if she were a decisionmaker about terminating his employment – knew about Mitchell's

'part' in the Gulino case with any temporal proximity to his termination."  (Id. at 23)  In this

regard, Judge Cave takes judicial notice of the docket in the Gulino case, which "reflects that

Mitchell did not 'join' the Gulino class until October 10, 2019, more than a year after his

termination from Wadleigh."  (Id. (emphasis in original))

   Although the Amended Complaint does not assert a claim under the

Rehabilitation Act (see Am. Cmplt. (Dkt. No. 39)), Judge Cave considers whether the facts

alleged in the Amended Complaint would support such a claim.  (R&R (Dkt. No. 51) at 24-29)

The Amended Complaint pleads that (1) Mitchell engaged in protected activity by filing

complaints on behalf of his special education students in May and June of 2018, and (2) Mitchell

was terminated on June 25, 2018.  (see Am. Cmplt. (Dkt. No. 39) at 9-10 ¶¶ 15, 18)  Judge Cave

concludes that this temporal proximity alone is insufficient to support a causal inference, because

the Amended Complaint also pleads that "'gradual adverse job actions began well before'"

Mitchell filed complaints on behalf of his special education students.  (R&R (Dkt. No. 51) at 28)

As to Mitchell's due process claim, Judge Cave concludes that Mitchell is alleging that his "termination without a tenure hearing constituted 'the loss of a protected property and liberty interest.'"  (Id. at 29 (quoting Emma v. Schenectady City Sch. Dist., 28 F. Supp. 2d 711, 718 (N.D.N.Y. 1998), aff'd, 199 F.3d 1322 (2d Cir. 1999)))  Because "Mitchell 'was a probationary teacher at the time of his termination[, however,] [he] had no Fourteenth Amendment property interest in his position' as is necessary to support a procedural due process claim."  (Id. at 30 (quoting Desir v. City of New York, 453 F. App'x 30, 36 (2d Cir. 2011) (summary order)))

Finally, Judge Cave recommends denying leave to amend because, "[d]espite the Court's guidance in Mitchell I and Mitchell II, Mitchell has thus far failed to state a claim, and given the Court's analysis of the substantive deficiencies in each of his claims analyzed in this Report and Recommendation, the Court is not persuaded that a third attempt to state a viable claim would be successful."  (Id. at 31)

### C.   Plaintiff's Objections

Mitchell filed timely objections to Judge Cave's December 12, 2022 R&R.  (Pltf. Obj. (Dkt. No. 55))

In his objections, Plaintiff argues that the Amended Complaint "alleges more than conclusory statements and contains sufficient factual content . . . to draw the reasonable inference that Defendants discriminated against Plaintiff."  (Pltf. Obj. (Dkt. No. 55) at 12-13)  According to Plaintiff, the following factual allegations support an inference of discrimination:

> As Plaintiff approached retirement age, he started to receive unfounded negative ratings regardless of his actual performance, was denied support by administration, and was ultimately terminated in June 2018 (AC ¶3).  He received unfounded negative ratings in an effort to remove him from the school, while younger teachers did not receive the same treatment and received tenure at the school.

> Similarly situated male older (60 years or older) African-American teachers, Ashtok Bhati, Kevin Johnson, Thomas Chirgwin, Gustav Kome, suffered similar treatment by being harassed with poor ratings and disciplinary letters, and ultimately were removed from the school (AC ¶¶3-4)). In contrast, younger teachers Jason Coppola (in his late 20's/early 30's) and Kirby Mason (20's) were given tenure and continued to work at the school, and younger Hispanic teachers were hired as replacement**[s]** (AC ¶¶4-5). There were no longer any men of color teaching at the school after the following school year.
>
> Principal Fontanez showed favoritism to female staff; she provided them with more support/coaching. For instance, Ms. Beck, a younger female teacher, was failing but was kept at the school. On the contrary, another black male teacher with great ratings, who was great with students, was forced out of the school.

(Id. at 13)

Plaintiff further argues that he has "pled sufficient allegations that his negative [performance] ratings were unfounded and [that Defendants'] stated reason for [terminating his employment] was a pretext to cover up discrimination," citing the fact that 95% of his students "were promoted to the next grade." (Id. at 14-15) Plaintiff also argues that Judge Cave "erred in finding that the [Amended Complaint] 'fails to allege how Fontanez was personally involved in the discriminatory decision to terminate him,'" given that "[a]nnual ratings of teachers and recommendations to discontinue them are prepared by principals." (Id. at 15)

As to disparate impact, Plaintiff argues that "the [Amended Complaint pleads] that [the] comparators were also probationary teachers. Accordingly, they had the same responsibilities and duties, and were subject to the same workplace standards." (Id.) According to Plaintiff, the claim that "Principal Fontanez . . . hired younger Hispanic teachers who were in their late 20's to early 30's [to replace Plaintiff and other older Black teachers]" (Am. Cmplt. (Dkt. No. 39) ¶ 5) is sufficient to create "an inference of discrimination." (Pltf. Obj. (Dkt. No. 55) at 16) In any event, "'[w]hether two employees are similarly situated . . . presents a question of fact,' rather than a legal question to be resolved on a motion to dismiss." (Id. (quoting Brown v Daikin Am., Inc., 756 F.3d 219, 230 (2d Cir. 2014)))

As to his retaliation claims under Title VII, the ADEA, the NYSHRL, and the NYCHRL, Plaintiff argues that (1) his appeal of Fontanez's "Ineffective" teacher rating constitutes "protected activity"; and (2) he joined the Gulino class action on September 28, 2017. (Id. at 18)  As to any potential claim for retaliation under the Rehabilitation Act, Plaintiff argues that Judge Cave improperly "engaged in fact finding" (id. at 19) in concluding that the Amended Complaint's allegations "'undermine any inference of causation based on temporal proximity.'" (R&R (Dkt. No. 51) at 28 (quoting Graham v. Macy's, Inc., 2016 WL 354897, at *9 (S.D.N.Y. Jan. 28, 2016), aff'd, 675 F. App'x 81 (2d Cir. 2017)))

As to his due process claim, Plaintiff states that the Amended Complaint alleges that Plaintiff was "erroneously considered a probationary teacher at the time of his termination," and that Judge Cave erred in not recognizing that he had acquired "tenure by estoppel."  (Id. at 20)

## DISCUSSION

## I.   LEGAL STANDARDS

### A.   Review of a Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  Where a timely objection has been made to a magistrate judge's recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  Id.

However, "[o]bjections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original

papers will not suffice to invoke de novo review." Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (citation, quotation marks, and alteration omitted).  "[T]o the extent . . . that the [objecting] party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the [R&R] strictly for clear error." DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) (citation and quotation marks omitted).

Although "[t]he objections of parties appearing pro se are generally accorded leniency and should be construed to raise the strongest arguments that they suggest . . . [,] even a pro se party's objections to a[n] [R&R] must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." Id. at 340 (citations and quotation marks omitted).

For portions of the R&R to which no objection is made, a court's review is limited to a consideration of whether there is any "clear error on the face of the record" that precludes acceptance of the recommendations. Wingate v. Bloomberg, No. 11 Civ. 188 (JPO), 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (citation and quotation marks omitted).

**B.**     **Rule 12(b)(6) Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint," and must "draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).  A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give

13

the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]." Iqbal, 556 U.S. at 678.

In resolving a motion to dismiss, a court may "consider . . . the complaint and any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily." Bldg. Indus. Elec. Contractors Ass'n v. City of N.Y., 678 F.3d 184, 187 (2d Cir. 2012) (citation and quotation marks omitted).

A "pro se complaint . . . [is] interpret[ed] . . . to raise the 'strongest [claims] that [it] suggest[s].'" Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)).  "[A]lthough pro se filings are read liberally and must be interpreted 'to raise the strongest arguments that they suggest,' a pro se complaint must still 'plead sufficient facts to state a claim to relief that is plausible on its face.'" Wilder v. U.S. Dep't of Veterans Affairs, 175 F. Supp. 3d 82, 87 (S.D.N.Y. 2016) (citations omitted).  Moreover, "the court need not accept as true 'conclusions of law or unwarranted deductions of fact,'" Whitfield v. O'Connell, No. 09 Civ. 1925 (WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)), and "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,'" even where a plaintiff is proceeding pro se.  Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

## II.   ANALYSIS

### A.   Standard of Review for Plaintiff's Objections

As noted above, Mitchell objects to the R&R to the extent that Judge Cave finds that the Amended Complaint fails to state a claim for (1) discrimination or retaliation under Title VII, the ADEA, Section 1981, the NYSHRL, and the NYCHRL; or (2) violation of his due process rights.  (Pltf. Obj. (Dkt. No. 55) at 12-21)

Mitchell's objections merely repeat arguments that he made in his opposition to Defendants' dismissal motion.  (Compare Pltf. Obj. (Dkt. No. 55) at 12-21, with Pltf. Opp. (Dkt. No. 47) at 13-33)  Accordingly, this Court reviews Judge Cave's December 12, 2022 R&R only for clear error.  See DiPilato, 662 F. Supp. 2d at 339.

### B.   Title VII, ADEA, and NYSHRL Discrimination Claims

As this Court noted in the March 3, 2022 Order:

Mitchell's discrimination claims – whether brought under Title VII, the ADEA, Section 1981, [or] the NYSHRL . . . – are subject to the familiar McDonnell Douglas burden shifting framework.  Plaintiff must plead facts showing "'(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.'"  Sassaman v. Gamache, 566 F.3d 307,312 (2d Cir. 2009) (quoting Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008)); see also Dabney v. Christmas Tree Shops, 958 F. Supp. 2d 439, 450 n.11 (S.D.N.Y. 2013) (analyzing discrimination claims under Title VII, the ADEA, and the NYSHRL together under the first step of the McDonnell Douglass burden-shifting framework, under which a plaintiff must establish a prima facie case of discrimination); Pachecho v. N.Y. Presbyterian Hosp., 593 F. Supp. 2d 599, 629 (S.D.N.Y. 2009) (analyzing Section 1981 claim under the McDonnell Douglass framework and determining that a failure to adequately plead a Title VII claim is "equally fatal" to plaintiff's Section 1981 claim); Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999) (analyzing NYSHRL and NYCHRL race discrimination claims together under McDonnell Douglass framework).

(March 3, 2022 Order (Dkt. No. 36) at 9)[4]

        The December 12, 2022 R&R correctly notes that – as to the fourth <u>McDonnell Douglas</u> prong – the Amended Complaint proceeds on a disparate impact theory, contrasting Mitchell's experience and that of four other '"older, black[,] more highly compensated teachers' with that of two 'younger teachers [who] were given tenure and continued to work at the school, including Jason Coppola (in his late 20[]s/early 30[]s) and Kirby Mason (20[]s)."'  (R&R (Dkt. No. 51) at 16-17 (quoting Am. Cmplt. (Dkt. No 39) at 8 ¶ 4))

---

[4] In August 2019, the NYSHRL was amended to provide that it "shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of [the NYSHRL], have been so construed."  N.Y. Exec. Law§ 300.  Accordingly, for claims that accrued after this amendment went into effect, <u>see</u> S. 6577, 242d Leg. § 16(d) (N.Y. 2019), '"the standard for [NYSHRL discrimination] claims [is] closer to the standard of the NYCHRL.'" <u>Edelman v. NYU Langone Health Sys.</u>, 21 Civ. 502 (LGS), 2022 WL 4537972, at *14 (S.D.N.Y. Sept. 28, 2022) (second alteration in original) (quoting <u>Livingston v. City of New York</u>, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021)).

This amendment does not affect Plaintiff's NYSHRL claims, because those claims accrued, at the latest, on June 25, 2018.  (<u>See</u> Am. Cmplt. (Dkt. No. 39))  '"[A] cause of action for discrimination under the NYSHRL accrues and the limitation period begins to run on the date of the alleged discriminatory act.'"  <u>Syeed v. Bloomberg L.P.</u>, 568 F. Supp. 3d 314,321 (S.D.N.Y. 2021) (alteration in original) (quoting <u>Fair Hous. Just. Ctr., Inc. v. JDS Dev. LLC</u>, 443 F. Supp. 3d 494, 504 (S.D.N.Y. 2020)).  Courts have concluded that the effective date of N.Y. Exec. Law § 300 is either August 12, 2019 (the signing date) or October 11, 2019 (the date other parts of the omnibus bill containing the amendment take effect).  <u>Compare</u> <u>McHenry v. Fox News Network, LLC</u>, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (citing S. 6577, 242d Leg. § 16 (N.Y. 2019)) ("The amendment took effect on the signing date, August 12, 2019, although other parts of the omnibus bill containing it took effect on October 11, 2019.") <u>and</u> <u>Edelman</u>, 2022 WL 4537972, at *14 (stating that the "effective date of' N.Y. Exec. Law § 300 is "August 12, 2019"), <u>with</u> <u>Livingston</u>, 563 F. Supp. 3d at 232 n.14 (citing <u>Wellner v. Montefiore Med. Ctr.</u>, 17 Civ. 3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019)) ("These amendments were signed into law by then-Governor Andrew Cuomo on or about August 12, 2019.  Significantly, however, these amendments only apply to claims that accrue on or after the effective date of October 11, 2019.").  Accordingly, Plaintiff's discrimination and retaliation claims accrued before the amendments to the NYSHRL, and his Title VII, Section 1981, ADEA, and NYSHRL claims are all subject to the same standard.

Judge Cave recommends dismissal of Plaintiff's disparate impact claim, because the Amended Complaint has not alleged "any additional facts concerning [the comparators'] teaching positions, performance reviews, or background from which the Court could plausibly infer that [Plaintiff] was similarly situated in all material respects to these two individuals."  (Id. at 17 (internal quotation marks omitted))  In his objections, Plaintiff argues that it is sufficient to plead that both Plaintiff and the "comparators were [] probationary teachers[, and] [a]ccordingly, [] had the same responsibilities and duties, and were subject to the same workplace standards." (Pltf. Obj. (Dkt. No. 55) at 15)

Plaintiff's objection is overruled.  Plaintiff's reference to the comparators' probationary status lacks any "specificity as to [the] 'alleged comparators' qualifications, responsibilities, employment history,' and the particulars [of their performance as teachers]." See Adams-Flores v. City of New York, 18 Civ. 12150 (JMF), 2020 WL 996421, at *5 (S.D.N.Y. Mar. 2, 2020) (quoting Daniels v. City of New York, 17 Civ. 9960 (LGS), 2019 WL 251511, at *4 (S.D.N.Y. Jan. 17, 2019)); see also Small v. City of New York, 21 Civ. 1527 (GHW), 2022 WL 376030, at *6 (S.D.N.Y. Feb. 7, 2022) (dismissing discrimination claim based on comparators who were also probationary teachers because plaintiff failed to allege that the comparators "were similarly situated to him in all material respects").  In sum, Plaintiff offers no particulars as to the alleged comparators' educational qualifications, job performance, or even the subjects and grades they taught.  Accordingly, there is no basis for this Court to find that Plaintiff was similarly situated to them.[5]

---

[5]  The Court will not consider new allegations that Plaintiff asserts for the first time in his objections to the December 12, 2022 R&R.  (See Pltf. Obj. (Dkt. No. 55) at 13 ("Principal Fontanez showed favoritism to female staff; she provided them with more support/coaching.  For instance, Ms. Beck, a younger female teacher, was failing but was kept at the school.  On the contrary, another black male teacher with great ratings, who was great with students, was forced

As to Plaintiff's assertion that he received "unfounded negative ratings regardless of his actual performance" (Pltf. Obj. (Dkt. No. 55) at 13), this Court previously ruled that Mitchell has failed to link those ratings "in any way to [his] age, race, or gender." (March 5, 2022 Order (Dkt. No. 36) at 10)

> And while Mitchell asserts that he "was targeted and discriminated against by Principal Daisy Fontanez . . . based on being an older, African American male," and that he "believe[ s] [he] ha[ s] been the victim of age, race, and gender discrimination by the Wadleigh administration at DOE" (Cmplt. (Dkt. No. 2) at 8 ¶ 3), such conclusory statements – unsupported by facts giving rise to an inference of discriminatory intent – are insufficient to establish a prima facie case of discrimination.

(Id.)  This Court agrees with Judge Cave that the Amended Complaint "does not remedy [these] deficienc[ies]."  (R&R (Dkt. No. 51) at 16)

Finally, Plaintiff argues that "replacement by someone outside the plaintiff[']s protected category is a circumstance that gives rise to an inference of discrimination."  (Pltf. Obj. (Dkt. No. 55) at 16)  Judge Cave does not address this argument in her December 12, 2022 R&R. Accordingly, the Court will review this issue de novo.

The Amended Complaint alleges that

> [a]fter the [] removal of [Mitchell] and four other [] teachers age 60 or older by [Wadleigh's] administration, upon information and belief, Principal Fontanez then hired younger Hispanic teachers who were in their late 20's to early 30's as replacements.

(Am. Cmplt. (Dkt. No. 39) at 8 ¶ 5)

"The Second Circuit has ruled that pleading on information and belief in employment discrimination suits can suffice to meet the relevant plausibility standard when the relevant facts are particularly within the possession, knowledge, and control of the defendant."

---

out of the school."); see Chartwell Therapeutics Licensing, LLC v. Citron Pharma LLC, 16 Civ. 3181 (RPK) (CLP), 2020 WL 7042642, at *9-10 (E.D.N.Y. Nov. 30, 2020) (disregarding new factual allegations in plaintiff's opposition brief))

Moore v. City of New York, 15 Civ. 6600 (GBD) (JLC), 2017 WL 35450, at *23 (S.D.N.Y. Jan. 3, 2017), report and recommendation adopted, 2017 WL 1064714 (S.D.N.Y. Mar. 20, 2017). "Information and belief" allegations must, however, be supported by "a statement of facts that create a plausible inference of their truth." Id. (collecting cases). That Fontanez hired a "younger Hispanic teacher[]" to replace Mitchell after his termination is not a fact that is "peculiarly within the possession and control of the defendant[s]." Arista Recs., LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010). Mitchell could have asked a former colleague for the name, approximate age, race, and gender of the teacher who replaced him or one of the other four terminated "teachers age 60 or older." (Am. Cmplt. (Dkt. No. 39) at 8 ¶ 5) Moreover, Mitchell has not alleged facts supporting his information and belief allegation that he was replaced by a "younger Hispanic teacher," (id.) and that this action was the product of discriminatory animus. As discussed above, Mitchell's allegation that he was "discriminated against by Principal Daisy Fontanez . . . based on being an older, African American male" (id. at 8 ¶ 3) is entirely conclusory.

Accordingly, this Court overrules Plaintiff's objections to the R&R's recommendation that his discrimination claims under Title VII, the ADEA, and the NYSHRL be dismissed. Munoz-Nagel v. Guess, Inc., 12 Civ. 1312 (ER), 2013 WL 1809772, at *7 (S.D.N.Y. Apr. 30, 2013) ("Although Plaintiff is entitled to plead facts upon information and belief, . . . because Plaintiff has pointed to no information that would render her 'belief that younger applicants were hired over her anything more than a conclusory assertion, the Court finds that she has failed to state a claim under the ADEA.").

### C.      **Title VII, ADEA, and NYSHRL Retaliation Claims**

To make out a prima facie case of retaliation under Title VII, the ADEA, or the NYSHRL, a plaintiff must allege facts that show "'(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" Littlejohn, 795 F.3d at 316. "A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" Id. (quoting Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000)).

In the March 3, 2022 Order, this Court ruled that the following activities cited by Mitchell do not qualify as protected activity:

> (1) "speaking out about [his] classroom and school issues during October 2017"; (2) appealing his "Ineffective" rating for the 2016-2017 school year; (3) "giving sworn testimony to the DOE Office of Special Investigations in support of teacher Adalaida Kavaja," after she was accused of helping her students cheat on a Regents exam; and (4) "creating a YouTube video on 3/18/2018, called 'Save Wadleigh' demanding the school remain open and Principal Fontanez and Superintendent Altschul be removed from Wadleigh due to poor management, teacher displeasure, and community outrage with them."

(March 3, 2022 Order (Dkt. No. 36) at 12 (quoting Cmplt. (Dkt. No. 2) at 8 ¶¶ 5, 9-11)) Judge Cave concludes that these same allegations are repeated in the Amended Complaint, and remain deficient. (R&R (Dkt. No. 51) at 21-22)

Judge Cave further concludes that complaints filed on "behalf of [Mitchell's] students, not himself or other employees, . . . [do] not represent a protest about employment 'conduct prohibited by Title VII,'" and thus do not qualify as protected activity. (Id. at 23-24

(emphasis omitted))  "Title VII only protects those who protest what they reasonably and in good faith believe to be an unlawful employment practice as defined by the statute."  Garrett v. New York City Dep't of Educ., 05 Civ. 1650 (RER), 2008 WL 11414566, at *12 (E.D.N.Y. Aug. 11, 2008), aff'd, 362 F. App'x 227 (2d Cir. 2010); id. ("Because the targets of Gatti's allegedly racist comments were students outside of the parties' employment relationship, [plaintiff's] complaints about Gatti's behavior does not constitute a 'protected activity' within the meaning of [Title VII].").

As to Mitchell's participation in the Gulino class, Judge Cave finds that the Amended Complaint does not allege that Fontanez "knew about Mitchell's part[icipation] in the Gulino case with any temporal proximity" to any alleged adverse employment action.  (Id. at 22-23 (quotation marks omitted))  While Plaintiff disputes Judge Cave's conclusion as to when he joined the Gulino class (Pltf. Obj. (Dkt. No. 55) at 18), that fact is immaterial.  What matters is that the Amended Complaint does not contain factual allegations from which this Court could infer that Fontanez took adverse action against Plaintiff because of his membership in the Gulino class.  The Amended Complaint does not allege (1) when Fontanez learned of Plaintiff's participation in Gulino, thus precluding any inference of discrimination based on temporal proximity; (2) "direct[] evidence of retaliatory animus directed against the plaintiff by the defendant," see Littlejohn, 795 F.3d at 316; or (3) circumstantial evidence of racial animus, such as disparate treatment (for the reasons discussed above).

Accordingly, this Court finds no error in Judge Cave's finding that Plaintiff has not pled a prima facie retaliation claim.

**D.    Section 1981 Claims**

Mitchell has asserted claims for race-based employment discrimination under 42

U.S.C. § 1981.  (Am. Cmplt. (Dkt. No. 39) at 4)

Judge Cave notes that the Second Circuit has held that

> '[Section] 1981 does not provide a separate private right of action against state
> actors.'"  Gonzalez v. City of New York, 377 F. Supp. 3d 273, 284 (S.D.N.Y.
> 2019) (quoting Duplan v. City of New York, 888 F.3d 612, 621 (2d Cir. 2018)).
> As other courts in this District have recognized, "the Second Circuit reached this
> conclusion because it found that [42 U.S.C.] § 1983 already provided a remedy
> against state actors and that therefore, 'there is no reason to infer from the rights-
> conferring language of [Section] 1981 [] that it creates an additional, and
> duplicative, remedy.'"  Gonzalez, 377 F. Supp. 3d at 284 (quoting Duplan, 888
> F.3d at 620-21).  Since Duplan, courts in this District considering pro se
> plaintiffs' Section 1981 claims have construed them as asserting Section 1983
> claims.  See Kuperman v. City of New York, 2021 WL 4442855, at *5 (S.D.N.Y.
> Sept. 28, 2021) (noting that "courts in this District generally construe [S]ection
> 1981 claims against government entities – especially those brought by pro se
> plaintiffs – 'as causes of action brought under [Section] 1983,' and 'discuss
> whether the claims can survive pursuant to [Section] 1983 caselaw'") (quoting In
> re N.Y.C Dep't of Educ., 2019 WL 1433163, at *5 (S.D.N.Y. Mar. 29, 2019); see
> also Collymore v. City of New York, 767 F. App'x 42, 45 n.2 (2d Cir. 2019)
> (summary order) (noting that district court correctly construed Section 1981
> claims as Section 1983 claims pursuant to Duplan).

(R&R (Dkt. No. 51) at 8-9)

Accordingly, in the December 12, 2022 R&R, Judge Cave construes Mitchell's

Section 1981 claims as brought under Section 1983.  (Id. at 9)  As to the applicable legal

standard, Judge Cave notes that, "[t]o state a Section 1983 claim, 'a complaint must allege that

the defendant (1) deprived the plaintiff of rights secured by the Constitution and laws of the

United States, (2) while acting under color of state law.'"  (Id. at 9-10 (quoting Chamberlain v.

City of White Plains, 986 F. Supp. 2d 363, 381 (S.D.N.Y. 2013)))

Judge Cave correctly concludes that, as in the Complaint, "Mitchell's failure to

allege that Defendants acted pursuant to a municipal policy or custom is fatal to his ability to

state a Section 1983 claim against the DOE as well as Fontanez to the extent Mitchell sues her in

her official capacity."  (R&R (Dkt. No. 51) 11-12)  And while the Amended Complaint alleges

that "Principal Fontanez and Superintendent Altschul had a pattern of discriminating against men

of color in my age category to force out older, black more highly compensated teachers" (Am.

Cmplt. (Dkt. No. 39) at 8 ¶ 4), this allegation is insufficient, because (1) it does not identify any

"municipal policy" that led to a constitutional deprivation and (2) Fontanez and Altschul are not

official policymakers for the DOE.  See Agosto v. New York City Dep't of Educ., 982 F.3d 86,

98 (2d Cir. 2020) ("'[G]overnments should be held responsible when, and only when, their

official policies cause their employees to violate another person's constitutional rights.'")

(quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 122 (1988)); see also id. ("[T]he

chancellor appears to be the final policymaker for the Department of Education [and not

principals].");  McDonald v. Bd. of Educ. of City of New York, 2003 WL 21782685, at *4

(S.D.N.Y. July 31, 2003) ("Where, as here, [] authority is circumscribed by the Chancellor . . .

superintendent[s] cannot be said to be the final policymaker.").

Judge Cave further concludes that – to the extent the Amended Complaint can be

construed as asserting a Section 1983 claim against Fontanez in her individual capacity –

Mitchell does not plead facts showing that Fontanez was "'personally involved in the alleged

deprivation,'" i.e., in the decision to terminate Mitchell's employment at the June 25, 2018

discontinuance hearing.  (R&R (Dkt. No. 51) at 12 (quoting Gonzalez v. City of New York, 377

F. Supp. 3d 273, 287 (S.D.N.Y. 2019)))

In his objections, Mitchell contends that the Amended Complaint adequately

alleges Fontanez's involvement in the decision to discontinue him, because "[a]nnual ratings of

teachers and recommendations to discontinue them are prepared by principals."  (Pltf. Obj. (Dkt.

No. 55) at 15)  This new allegation is raised for the first time in Plaintiff's objections and thus

will not be considered.  In any event, this allegation does not demonstrate that Fontanez was

involved in the June 25, 2018 decision to discontinue Mitchell's employment.

Moreover, "for employment discrimination under section 1983, [unlike under

Title VII,] a plaintiff must 'establish that the defendant's discriminatory intent was a "but-for"

cause of the adverse employment action. . . ." Charles v. City of New York, 21 Civ. 5567 (JPC),

2023 WL 2752123, at *5 (S.D.N.Y. Mar. 31, 2023) (quoting Naumovski v. Norris, 934 F.3d 200,

214 (2d Cir. 2019)).  As discussed in connection with Mitchell's Title VII, ADEA, and

NYSHRL claims, Mitchell has not alleged facts suggesting that discriminatory animus played

any role in Fontanez's decision to rate him as "Ineffective" for the 2016-2017 school year, or in

the decision to terminate him at the June 25, 2018 discontinuance hearing.  It therefore follows

that Mitchell has not alleged that discriminatory intent was the but-for cause of those actions.

Accordingly, Judge Cave's recommendation that Mitchell's Section 1981-Section 1983 claims

be dismissed will be adopted.

## E.   **Rehabilitation Act Retaliation Claims**

As to any possible Rehabilitation Act retaliation claim, Judge Cave summarizes

the applicable law as follows:

> Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified
> individual with a disability in the United States . . . shall, solely by reason of [his
> or] her disability, be excluded from the participation in, be denied the benefits of,
> or be subjected to discrimination under any program or activity receiving Federal
> financial assistance[.]"  29 U.S.C. § 794(a).  This provision protects individuals
> with disabilities, and "extends its remedies to any person aggrieved by the
> discrimination of a person on the basis of his or her disability[,]" and the Second
> Circuit has recognized that "the use of such broad language in the enforcement
> provisions of the statutes evinces a congressional intention to define standing to
> bring a private action under [Section] 504 . . . as broadly as is permitted by Article
> III of the Constitution."  Innovative Health Sys., Inc. v. City of White Plains, 117
> F.3d 37, 47 (2d Cir. 1997), recognized as superseded on other grounds by Zervos
> v. Verizon N.Y., Inc., 252 F.3d 163, 171 (2d Cir. 2001).  Thus, a teacher who
> advocates on behalf of his special education students has standing to bring a

retaliation claim under the Rehabilitation Act.  See Payson v. Bd. of Educ. of Mt. Pleasant Cottage Sch., USFD, No. 14 Civ. 9696 (JCM), 2017 WL 4221455, at *21 (S.D.N.Y. Sept. 20, 2017) (noting that parties did not dispute special education teachers' standing to bring Rehabilitation Act retaliation claims); Stahura-Uhl v. Iroquois Cent. Sch. Dist., 836 F. Supp. 2d 132, 143 n.8 (W.D.N.Y. 2011) (same); Felton v. Katonah Lewisboro Sch. Dist., No. 08 Civ. 9340 (SCR), 2009 WL 2223853, at *6 (S.D.N.Y. July 27, 2009) (holding that teachers who advocated on behalf of their special education students had standing to assert Rehabilitation Act standing claims).

. . . . To allege a prima facie Rehabilitation Act retaliation claim, then, a plaintiff must plausibly allege that "(i) [he] was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 148 (2d Cir. 2002).  At the pleading stage, a plaintiff's "burden . . . is de minimis."  Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).  If the plaintiff establishes a prima facie claim, "the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision[,]" following which "the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." Id. at 721.

(R&R (Dkt. No. 51) at 24-25)

Judge Cave recommends dismissal of any Rehabilitation Act claim against Fontanez because "Section 504 does not permit 'liability against individually-named defendants sued in their individual capacities.'"  (Id. at 26 (quoting Payson, 2017 WL 4221455, at *22)) Plaintiff does not object to this recommendation, and this Court sees no clear error in it. Accordingly, Plaintiff's Section 504 claims against Defendant Fontanez will be dismissed.

Defendants further argue that the Amended Complaint does not adequately plead the fourth prong of a prima facie Section 504 retaliation claim – causation.  (Def. Br. (Dkt. No. 41) at 27-28; Def. Reply (Dkt. No. 48) at 14)  The Amended Complaint asserts that "Mitchell filed the complaints on behalf of his special education students '[i]n May and June of 2018[,]' and was terminated on June 25, 2018, less than two months later."  (R&R (Dkt. No. 51) at 27-28 (quoting (Am. Cmplt. (Dkt. No. 39) at 9 ¶ 5))

25

Judge Cave notes that (1) "Mitchell has not alleged any basis for inferring causation other than [the temporal proximity between his complaints on behalf of his students and his termination]"; and (2) "'[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.'"  (Id. at 28 (quoting Slattery, 248 F.3d at 95)) While noting that the temporal proximity between Mitchell's complaints on behalf of his students and his termination would ordinarily be sufficient to infer causation (id. at 27-28 (citing Payson, 2017 WL 4221455, at *25 (finding that two-month temporal proximity was "sufficient for a reasonable factfinder to find causation"))), Judge Cave concludes that the Amended Complaint's allegations of other "adverse job actions" – in  particular, the "'poor ratings [Mitchell received despite his] . . . actual [job] performance'" and the Wadleigh administration's failure to provide Mitchell with classroom support (Id. (quoting Am. Cmplt. (Dkt. No. 39) at 8 ¶¶ 3, 7-8)) – "'undermine any inference of causation based on temporal proximity.'"  (Id. at 28 (quoting Graham, 2016 WL 354897, at *25))

In his objections, Plaintiff complains that Judge Cave engaged in "fact finding" in arriving at this conclusion.  (Pltf. Obj. (Dkt. No. 55) at 18-19)  But Judge Cave did no more than cite the Amended Complaint's allegations, which state that Mitchell "began to receive poor ratings regardless of [his] actual performance" in 2016-2017, and that Fontanez rated Mitchell as "Ineffective" for that school year, well before he filed any complaints on behalf of his special education students in May and June of 2018.  (Am. Cmplt. (Dkt. No. 39) at 8 ¶¶ 3, 11)

This Court agrees with Judge Cave that these allegations undermine any inference of causation based on the temporal proximity between Mitchell's complaints and his termination at the end of the 2017-18 school year.  See Slattery, 248 F.3d at 95; Heiden v. New York City

Health & Hosps. Corp., 20 Civ. 10288 (LJL), 2023 WL 171888, at *24 (S.D.N.Y. Jan. 11, 2023)

("'[W]here timing is the only basis for a claim of retaliation, and gradual adverse job actions

began well before the plaintiff had ever engaged in any protected activity, an inference of

retaliation does not arise[.]'  . . . Were it otherwise, an employee concerned about the risk of an

adverse action could forestall the action –  and effectively hamstring his employer – with an

artfully timed request for accommodation or complaint about discrimination.") (quoting Slattery,

248 F.3d at 95)).  Aside from timing, Mitchell has not alleged any facts suggesting that his May

and June 2018 complaints on behalf of his special education students caused his June 25, 2018

discontinuance. This Court concludes that he has not adequately stated a Section 504 claim for

retaliation.  See Williams v. Woodhull Med. & Mental Health Ctr., 891 F. Supp. 2d 301, 330

(E.D.N.Y. 2012) ("Given that these prior adverse employment actions undermine any inference

of retaliation based on the timing of subsequent adverse actions, and that plaintiff has not

presented any other evidence of causation, plaintiff fails to establish a prima facie case of

retaliation."); Graham, 2016 WL 354897, at *9.

> Finally, it is worth noting that it is far from clear that Mitchell intends to assert a

Section 504 retaliation claim in the Amended Complaint.  The Complaint contained no such

claim, but in response to statements in Mitchell's brief opposing Defendant's first motion to

dismiss, Judge Cave invited him to plead such a claim.  In her May 7, 2021 R&R, Judge Cave

recommends that Mitchell be granted leave to plead – in an amended complaint – a

"Rehabilitation Act claim predicated on the complaints he filed on behalf of special education

students within a month of his termination."  (R&R (Dkt. No. 30) at 25-26)  In the March 3,

2022 Order, this Court adopted that recommendation, stating that "[a]ny amended complaint may

include a claim under Section 504 of the Rehabilitation Act."  (Mar. 3, 2022 Order (Dkt. No. 36)

at 15)  Despite these explicit invitations, the Amended Complaint contains no language citing or referencing Section 504, nor is the box for a Section 504 claim checked off in Mitchell's form complaint. (See Am. Cmplt. (Dkt. No. 39) at 4)

To the extent that the Amended Complaint alleges retaliation under Section 504 of the Rehabilitation Act, any such claim will be dismissed.

### F.   Due Process Claim

Plaintiff argues that he was "denied due process as he was not given a Section 3020-a tenure hearing before being taken off payroll in June 2018." (Pltf. Opp. (Dkt. No. 47) at 31)

"A procedural due process claim is composed of two elements:  (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." Bryant v. New York State Educ. Dept., 692 F.3d 202, 218 (2d Cir. 2012).  "[T]enured public employees," including tenured New York City school teachers, "have a constitutionally protected property interest in their employment." Harhay v. Town of Ellington Bd. Of Educ.,323 F.3d 206, 213 (2d Cir. 2003); see Desir v. City of New York, 07 Civ. 4737 (CBA) (SMG), 2010 WL 11526882, at *14 (E.D.N.Y. Aug. 24,2010), aff'd, 453 F. App'x 30 (2d Cir. 2011).  Tenured teachers therefore can only be terminated for cause after a hearing under Section 3020-a of New York 's Education Law.  See N.Y. Educ. Law § 3014 ("Such persons shall hold their respective positions during good behavior and competent and efficient service and shall be removed except for any of the following causes, after a hearing, as provided by section three thousand twenty-a.").  "However, '[i]t is well settled under New York law that the services of a probationary teacher may be discontinued at any time during the probationary period,' and probationary teachers therefore 'ha[ve] no property interest in [their] employment.'"  Ahmad v.

White Plains City Sch. Dist., 18 Civ. 3416 (KMK), 2019 WL 3202747, at *16 (S.D.N.Y. July 16,

2019) (quoting Federico v. Bd. Of Educ. Of Pub. Sch. Of Tarrytown, 955 F. Supp. 194,199 n.l

(S.D.N.Y. 1997)).

        The parties dispute whether Plaintiff had tenure at the time of his June 25, 2018

termination.  Defendants contend that Mitchell was hired as a teacher on September 6, 2016

"under a new [social studies teaching license], [and therefore] was set to serve a four-year

probationary employment period prior to being eligible for tenure."  (Def. Br. (Dkt. No. 41) at

30)  Accordingly, Mitchell was a probationary teacher when he was terminated on June 25, 2018.

(Id.)  Plaintiff counters that by the time he was terminated he had acquired "tenure by estoppel,"

because he had "worked as a full-time substitute teacher in a high school under his special

education license in the 2014-15 and 2015-16 school year."  (Pltf. Opp. (Dkt. No. 47) at 31-32)

        Judge Cave finds that the Amended Complaint "establishes as a matter of law that

Mitchell 'was a probationary teacher at the time of his termination[, and] therefore had no

Fourteenth Amendment property interest in his position.'"  (R&R (Dkt. No. 51) at 30 (quoting

Desir v. City of New York, 453 F. App'x 30, 36 (2d Cir. 2011) (summary order)).  Judge Cave

did not address Plaintiff's argument that he had acquired tenure by estoppel, however.

Accordingly, this issue will be reviewed de novo.

        This Court concludes that even assuming arguendo that Plaintiff had acquired

"tenure by estoppel," he has not stated a claim under the due process clause.  "'Due process

requires, as a general matter, an opportunity to be heard at a meaningful time and in a

meaningful manner.'"  Adams v. New York State Educ. Dep't, 8 Civ. 5996 (VM) (AJP), 2010

WL 624020, at *29 (S.D.N.Y. Feb. 23, 2010), report and recommendation adopted, 705 F. Supp.

2d 298 (S.D.N.Y. 2010) (quoting Calhoun v. N.Y.S. Div. of Parole Officers, 999 F.2d 647, 653

(2d Cir.1993).  "In particular, '[t]he tenured public employee is entitled to oral or written notice
of the charges against him, an explanation of the employer's evidence, and an opportunity to
present his side of the story.'"  Id. (quoting Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532,
546, 547-48 (1985)).

        Mitchell argues that because he had "already acquired tenure by estoppel at the
time of his termination . . . he could not have been terminated without complying with the due
process provisions of Education Law § 3020-a."  (Pltf. Obj. (Dkt. No. 55) at 20)  According to
the Amended Complaint, Mitchell was terminated after a June 25, 2018 "discontinuance
hearing" presided over by a "review panel."  (Am. Cmplt. (Dkt. No. 39) at 10 ¶ 18)  Mitchell
goes on to allege that the "review panel stated that there was not enough [evidence] to warrant a
discontinuance of [his] service based on [Mitchell's] actual teaching performance . . . [given his]
students' successful Regent['s examination] scores."  (Id. at 8 ¶ 19)  But Mitchell has not alleged
any facts regarding the process he was given prior to or at the hearing.  Nor has Mitchell alleged
what evidence the review panel relied on in arriving at its decision.  Nor has Plaintiff argued that
the process he received at the June 25, 2018 discontinuance hearing was deficient in any way
under § 3020-a or any other applicable law.  (See generally Pltf. Opp. (Dkt. No. 47) (arguing
only that Plaintiff had acquired tenure by estoppel))  Mitchell has not argued, for example, that
he was not given adequate notice of the charges against him, that he was not given an
opportunity to be heard, that he was prevented from offering evidence at the hearing, or that the
decision to terminate his employment was not supported by any evidence.  Accordingly, he has
not pled a violation of his due process rights.  Bacon v. Phelps, 15 Civ. 1502 (DNH) (CFH),
2018 WL 4178221, at *7 (N.D.N.Y. July 31, 2018), report and recommendation adopted, 2018
WL 4150882 (N.D.N.Y. Aug. 30, 2018), aff'd, 961 F.3d 533 (2d Cir. 2020) ("[P]laintiff has not

alleged that he received inadequate notice, that he was denied an opportunity to be heard at the hearing, that he was precluded from presenting witnesses or evidence, or that the statement of disposition was not supported by some evidence. . . . Thus, plaintiff fails to sufficiently plead [a violation of] ... his Fourteenth Amendment procedural due process rights.").

G.   **Remaining Claims**

Neither Mitchell nor Defendants object to the remainder of the December 12, 2022 R&R's recommendations, in which Judge Cave recommends dismissing (1) the claims that were previously dismissed with prejudice in the Court's March 3, 2022 Order, and (2) any First Amendment retaliation claim, to the extent the Amended Complaint could be read as pleading such a claim.  (See R&R (Dkt. No. 51) at 8, 22 & n.4)  This Court finds no clear error in those portions of the R&R.

Judge Cave correctly declined to reconsider Plaintiff's claims which this Court dismissed with prejudice in the March 3, 2022 Order.  (See March 3, 2022 Order (Dkt. No. 36) at 15 ("Mitchell's failure to file a notice of claim requires dismissal of' his "NYSHRL and NYCHRL claims against the DOE[.] . . . To the extent that Plaintiff's Title VII and ADEA claims are based on discrete discriminatory actions that took place before June 6, 2018, . . . they are time-barred. . . . Mitchell's Title VII and ADEA claims against Defendant Fontanez must be dismissed, because those statutes do not impose liability on individuals."))  See Koltun v. Berry, 13 Civ. 1612 (PAC) (JCF), 2016 WL 6601558, at *6 (S.D.N.Y. Nov. 7, 2016), report and recommendation adopted, 2017 WL 476693 (S.D.N.Y. Feb. 3, 2017) (declining to revisit claims that were previously dismissed with prejudice); Collier v. Boymelgreen Developers, 06 Civ. 5425(SJ), 2008 WL 835706, at *5 (E.D.N.Y. March 28, 2008) (holding same).

As to any First Amendment retaliation claim, Judge Cave concludes that Mitchell has not alleged that the "Save Wadleigh" video he posted on YouTube constitutes "'protected activity <u>known to the defendant.</u>'"  (R&R (Dkt. No. 51) at 22 n.4 (quoting <u>Bartolini v. Cassels</u>, 17 Civ. 5671 (NSR) (PED), 2018 WL 3023161, at *8 (S.D.N.Y. June 18, 2018) (emphasis in R&R))  "[A] person cannot retaliate based on an action they had no knowledge of," and, therefore, "[a] retaliation claim should be dismissed when it fails to allege that the employer knew the employee engaged in a protected activity."  <u>Romano v. A360 Media, LLC</u>, 20 Civ. 8988 (LTS) (OTW), 2023 WL 348459, at *12 (S.D.N.Y. Jan. 20, 2023) (citing <u>Jordan v. Forfeiture Support Assocs.</u>, 928 F. Supp. 2d 588, 609 (E.D.N.Y. 2013) (dismissing ADA retaliation claim where, among other reasons, the complaint did "not allege that defendant was aware of that protected activity or considered that protected activity in deciding to terminate plaintiff")).  The Amended Complaint does not allege that Fontanez or any other DOE employee was aware of the "Save Wadleigh" video, much less when they learned of the video's existence and of Mitchell's involvement in its production.  (<u>See</u> Am. Cmplt. (Dkt. No. 39) at 9 ¶ 14 ("I was further retaliated against for creating a YouTube video posted on the internet and made available to the public on 3/18/2018, called 'Save Wadleigh'."))  Accordingly, Judge Cave's recommendation that any First Amendment claim be dismissed will be adopted.

Finally, "'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law [and local-law] claims.'"  <u>Sefovic v. Mem'l Sloan Kettering Cancer Ctr.</u>, 15 Civ. 5792 (PAC), 2017 WL 3668845, at *8 (S.D.N.Y. Aug. 23, 2017) (quoting <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988)).  While the Court has considered

Plaintiff's NYSHRL claims, it has done so because the legal standards for those claims are the same as those applied to Plaintiff's federal claims.  Given the much different legal standards that apply under the NYCHRL, there is no reason to vary from the standard rule that where all federal claims are dismissed before trial, jurisdiction should not be exercised over the remaining local law claims.  Accordingly, this Court will not exercise supplemental jurisdiction over Plaintiff's remaining NYCHRL claims.

    **H.**    <u>**Leave to Amend**</u>

        The Second Circuit has cautioned that district courts "should not dismiss [a <u>pro</u> <u>se</u> complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  <u>Cuoco v. Moritsugu</u>. 222 F.3d 99, 112 (2d Cir. 2000).  "'Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend.'"  <u>Lucente v. Int'l Bus Machines Corp.</u>, 310 F.3d 243, 258 (2d Cir. 2002) (quoting <u>Ruffolo v. Oppenheimer & Co.</u>, 987 F.2d 129, 131 (2d Cir. 1993) (<u>per</u> <u>curiam</u>)).

        Here, Judge Cave recommends that leave to amend be denied, because "Mitchell has thus far failed to state a claim" "[d]espite the Court's guidance [in the first R&R and in this Court's March 3, 2022 Order]."  (R&R (Dkt. No. 51) at 31)  Indeed, Mitchell filed the Amended Complaint not only after having the opportunity to "preview defendants' arguments in support of a motion to dismiss," <u>Green v. Niles</u>, 11 Civ. 1349 (PAE), 2012 WL 987473, at *7 (S.D.N.Y. Mar. 23, 2012), but also after the deficiencies in his pleadings were discussed in detail in Judge Cave's first R&R and in this Court's March 3, 2022 Order.  (<u>See</u> R&R (Dkt. No. 31); March 3, 2022 Order (Dkt. No. 36))

In his objections, Plaintiff requests leave to file a second amended complaint. (Pltf. Obj. (Dkt. No. 55) at 20)

There is no reason to believe that granting Plaintiff a third attempt to state a viable federal claim would be fruitful, however.  Accordingly, leave to amend will be denied.  See Tsinberg v. New York, 20 Civ. 749 (PAE) (SLC), 2021 WL 1536659, at *16 (S.D.N.Y. Jan. 22, 2021), report and recommendation adopted, 2021 WL 1146942 (S.D.N.Y. Mar. 25, 2021) ("[Plaintiff] has thus far failed to state a claim, and given the Court's analysis of the substantive deficiencies in each of his claims set forth above, the Court is not persuaded that a third attempt to state a viable claim would be successful.").

## CONCLUSION

Judge Cave's December 12, 2022 R&R is adopted as set forth above, Defendants' motion to dismiss is granted as set forth above, and leave to amend is denied.  The Clerk of Court is directed to terminate the motion (Dkt. No. 40) and to close this case.

Dated:  New York, New York
        March 19, 2024

SO ORDERED.

Paul G. Gardephe
United States District Judge

34